## Hall v. Commonwealth.

(Decided January 9, 1923.)

### Appeal from Floyd Circuit Court.

1. Criminal Law—Plea of Former Jeopardy.—A plea of former jeopardy must be in writing and must conform to the requirements of the Code provision upon that subject.

2. Intoxicating Liquors—Conviction in Federal Court Not Bar to Indictment in State Court.—Although one is tried and convicted in the federal court for the offense of operating a moonshine still, such conviction is no bar to an indictment and trial in a state court upon the same facts for the same offense.

3. Intoxicating Liquors—Conviction in Federal Court Not Bar to Indictment in State Court.—The federal government is one sovereignty and the state government is another, to both of which a citizen of Kentucky must respond if he violates the prohibition laws against the manufacture of whiskey.

JOHN N. HAMILTON for appellant.

CHAS. I. DAWSON, Attorney General, and THOS. B. McGREGOR, Assistant Attorney General, for appellee.

Opinion of the Court by Chief Justice Sampson— Affirming.

Appellant Jonathan Hall was indicted in the Floyd circuit court, at its February term, 1921, charged with the offense of operating a moonshine still in violation of our statutes, section 2554d-1. At the February term, 1922, of the court appellant was placed on trial. He pleaded former jeopardy in writing, as follows:

"The defendant, Jonathan Hall, says that he has been convicted of the offense charged in the indictment by the judgment of the United States District Court, Eastern District of Kentucky, at Catlettsburg, Kentucky, rendered on the 26th day of May, A. D., 1921, May term.

"Upon the above plea he prays the judgment of the court."

His plea being rejected by the court and he found guilty and his punishment fixed at a fine of $100.00 and by confinement in the county jail for one day, he appeals, urging a reversal because, he says, that by a provision of the Federal, as well as the state Constitutions, no person shall be twice placed in jeopardy for the same offense, whereas in violation of said constitutional provision he has been twice fined for the identical offense, once in the Federal court and a second time in the state court. It is conceded by the Commonwealth that Hall was duly indicted, tried and convicted in the United States district court, as set forth in his plea of former jeopardy, and his fine fixed at $75.00.

It seems that this court has not had before it nor passed upon the precise question presented by this appeal except that in the case of Commonwealth v. Overby, 80 Ky. 208, which was a forfeited bond case, we adverted generally to the subject. After disposing of the case upon other grounds the opinion says: "Manifestly, the defendant in this case could not have been tried and convicted of the same offense in the United States circuit court. For, though tried by the United States court, still it was the same offense for which he was held to answer in the state court, denounced alike by the laws of the United States and of this state." This is the only case cited by appellant Hall in support of his plea of former jeopardy which in any way sustains his position. In the Overby case, *supra*, the charge was counterfeiting United States treasury notes and the defendant had failed to appear and his bail bond had been forfeited. The sureties

on the bail bond in the forfeiture proceedings made response that on the day following the execution of the bail bond Overby was arrested by an officer of the United States and carried before a United States commissioner, and by him required to appear and answer at the next term thereafter of the United States district court, held in the city of Louisville, the same charge for which he had been required to appear and answer in the state court; that failing to give bail in the Federal court he was committed to the jail of Jefferson county, where he remained until February, 1881, when he was indicted, tried and convicted in the Federal court for the said offense and sentenced to confinement in the penitentiary in the state of New York for a term of five years. He was actually in jail in the custody of the United States court at the time the bail bond was forfeited on which the proceeding was based. It, therefore, appears that the issue in the Overby case was whether the actual confinement in the Jefferson county jail, under the orders of the Federal court was sufficient excuse to exonerate the sureties who had made his bond in the Christian circuit court. The paragraph above quoted from the opinion seems, therefore, not to have been pertinent to the single question involved in the said opinion, and may be regarded as dictum.

The general rule as laid down by text writers and courts generally is that the same transaction may constitute an offense against the laws of the United States and also against the laws of a state, and in such case the accused may be punished under both statutes, and an acquittal or conviction in the courts of either is no bar to an indictment and conviction in the other. This is based upon the theory that the United States government is a separate and distinct sovereignty from that of the state; and as the same act sometimes, as in this case—illicit manufacture of whiskey—is an offense against the laws of the two sovereignties to which the defendant alike owes allegiance and submission to law, he may be required to respond in the courts of both, and if convicted in each, suffer the penalty prescribed by the laws of the respective sovereignties.

The basis of appellant's insistence that his trial in the Federal court is a bar to his prosecution in the state court for the same offense is rested both upon the identity and singleness of the facts and the peculiar construc-

tion which he places upon the Eighteenth Amendment to the Federal Constitution, which reads:

"Section 1. After one year from the ratification of this article the manufacture, sale or transportation of intoxicating liquors within, the importation thereof into, or the exportation thereof from, the United States and all territory subject to the jurisdiction thereof, for beverage purposes, is hereby prohibited.

"Section 2. The Congress and the several states have concurrent power to enforce this article by appropriate legislation."

He insists that as section 2 of said amendment confers upon Congress and the several states concurrent power to enforce prohibition by appropriate legislation that this is a joint power, or a power conferred upon either the Federal government or the state government to enforce the provisions of the first section of said amendment by appropriate penalties, but that both could not in a single case growing out of the same facts exact the penalties. It would appear, however, that the Federal amendment does not change the rule upon the subject, nor was it intended to change the double sovereignty theory which has prevailed in this country so long, giving to the United States government a right to punish for infringement of its statutes growing out of the same facts which constitute a breach of the state law and for which the offender has already suffered the penalties denounced by the state statutes. Manifestly the Federal government is one sovereignty with full power and authority under the Constitution to prohibit the manufacture and sale of intoxicating liquors, and equally clear is the sovereignty of the several state governments with respect to the enforcement of prohibition, as in the punishment of any and all other crimes, and the states must therefore possess the power to pass and enforce legislation to prohibit the manufacture and sale of such intoxicants. In this view the trial of an offender against the prohibition laws in the courts of one of these sovereignties is not a bar to a trial and conviction in the other. In the recent case of the United States v. Vito Lanza, et al., decided December 11, 1922, the Supreme Court of the United States, speaking through Chief Justice Taft, disposed of the exact question under consideration, as follows:

"The amendment was adopted for the purpose of establishing prohibition as a national policy reaching

every part of the United States and affecting transactions which are essentially local or intrastate, as well as those pertaining to interstate or foreign commerce. The second section means that power to take legislative measures to make the policy effective shall exist in Congress in respect to the territorial limits of the United States and at the same time the like power of the several states within their territorial limits shall not cease to exist. Each state, as also Congress, may exercise an independent judgment in selecting and shaping measures to enforce prohibition. Such as are adopted by Congress become laws of the United States and such as are adopted by a state become laws of that state. They may vary in many particulars, including the penalties prescribed, but this is an inseparable incident of independent legislative action in distinct jurisdictions.

"To regard the amendment as the source of the power of the state to adopt and enforce prohibition measures is to take a partial and erroneous view of the matter. Save for some restrictions arising out of the Federal Constitution, chiefly the commerce clause, each state possessed that power in full measure prior to the amendment, and the probable purpose of declaring a concurrent power to be in the states was to negative any possible inference that investing the national government with the power of country-wide prohibition, state power would be excluded. In effect the second section of the Eighteenth Amendment put an end to restrictions upon the states' power arising out of the Federal Constitution and left her free to enact prohibition laws applying to all transactions within her limits. To be sure, the first section of the amendment took from the states all power to authorize acts falling within its prohibition, but it did not cut down or replace prior state laws not inconsistent with it. Such laws derive their force, as do all new ones consistent with it, not from this amendment, but from power originally belonging to the states, preserved to them by the Tenth Amendment, and now relieved from the restriction heretofore arising out of the Federal Constitution. This is the *ratio decindendi* of our decision in *Vigilotti v. Pennsylvania* (April 10, 1922).

"We have here two sovereignties, deriving power from different sources, capable of dealing with the same subject matter within the same territory. Each may, without interference by the other, enact laws to secure prohibi-

tion, with the limitation that no legislation can give validity to acts prohibited by the amendment. Each government in determining what shall be an offense against its peace and dignity is exercising its own sovereignty, not that of the other.

"It follows that an act denounced as a crime by both national and state sovereignties is an offense against the peace and dignity of both and may be punished by each. The Fifth Amendment, like all the other guaranties in the first eight amendments, applies only to proceedings by the Federal government, *Barron v. The City of Baltimore,* 7 Pet. 243, and the double jeopardy therein forbidden is a second prosecution under the authority of the Federal government after a first trial for the same offense under the same authority. Here the same act was an offense against the state of Washington, because a violation of its law, and also an offense against the United States under the national prohibition act. The defendants thus committed two different offenses by the same act, and a conviction by a court of Washington of the offense against that state is not a conviction of the different offense against the United States and so is not double jeopardy."

The foregoing extract from the opinion of the Supreme Court fully disposes of the question we have under consideration, for our constitutional provision on the subject of jeopardy reading: "No person shall, for the same offense, be twice put in jeopardy of life or limb," is so like the provision on the same subject in the Federal Constitution, reading: "Nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb," that the two must be construed to mean in substance the same, following which construction we must hold that an offender against the state laws is not put in jeopardy a second time at his trial in the state court by reason of the fact he has been tried upon the same facts in the Federal court but may only successfully plead former jeopardy in cases in which he has been tried upon the same facts for the same offense in a court of this Commonwealth having jurisdiction of the person of the defendant and of the subject matter. As appellant Hall had not been tried in any court of this Commonwealth on the facts upon which he was convicted he has not been twice put in jeopardy for the same offense within the meaning of our constitutional provision, *supra.*

It follows, therefore, that the trial court properly rejected his plea of former jeopardy and submitted the case to the jury.

Judgment affirmed.