464 P.2d 401

**Coy L. MARONEY and Lovington National Bank, Plaintiffs-Appellees,**

v.

**UNITED STATES FIDELITY AND GUAR-ANTY COMPANY, Defend-ant-Appellant.**

**No. 8864.**

Supreme Court of New Mexico.

Jan. 26, 1970.

Keleher & McLeod, Patrick W. Hurley, Albuquerque, for defendant-appellant.

George L. Zimmerman, Alamogordo, for Coy L. Maroney.

Merrill L. Norton, Lovington, for Lovington National Bank.

## OPINION

WATSON, Justice.

On the trial of this action without a jury, the court found that on July 28, 1963, Coy L. Maroney had entered into a 20-year lease of a parcel of land with E. E. Miller, and that Maroney had borrowed money from Lovington National Bank, had used the proceeds to build a dwelling on the leased property, and had given a security agreement, an agreement, and a bill of sale on the dwelling to the Bank to secure repayment of the loan. The court further found that on May 10, 1967, Maroney obtained a fire insurance policy from the defendants for $8,000.00 on the dwelling and $2,500.00 on the contents and pledged this to the Bank as additional security. But the court

also found that although his father, Fountain A. Miller, had conveyed the parcel to E. E. Miller before he leased it, after his father's death, and on October 13, 1966, the United States District Court had rendered a final judgment in Cause No. 6398 holding this deed invalid for failure of delivery.

Other facts found by the trial court which were disputed by appellants were that prior to the lease E. E. Miller had acted as agent for his father, and that the lease was executed in the presence of Fountain A. Miller and with his knowledge and consent.

On February 6, 1968, the residence and a storage barn on the tract were wholly destroyed by fire. Defendant refused payment for two reasons. First, it claimed Maroney had no insurable interest because he was a mere trespasser on the land, and in any event he had conveyed his interest in the property to the Bank by the bill of sale. Secondly, the Bank could not recover because it was not named in the policy or in the loss payable clause, and the insurer had not consented to the assignment of the policy to the Bank.

The trial court rendered judgment in favor of Maroney for $3,413.00 and in favor of Lovington National Bank for $4,587.00. United States Fidelity and Guaranty Company, the insurance carrier, appeals. In addition to its objections above mentioned, it claims that the damages awarded Maroney are excessive.

Based upon its findings, the trial court concluded that plaintiff Maroney, on the date of the fire, had an insurable interest in the residence and storage barn which were destroyed. It also concluded that Maroney had lawful possession and was the owner of the residence and storage barn, and that his leasehold estate must be presumed to be valid until decreed otherwise by a court having jurisdiction so to do. The court refused appellant's requested conclusion that Maroney was a trespasser.

We agree that there is a presumption of validity of the lease. Conway v. San Miguel County Board of Education, 59 N.M. 242, 282 P.2d 719 (1955). Whether this was overcome by appellee's evidence we need not here decide. The finding that the federal court had held that the lessor had not received a deed to the parcel before leasing it would not be binding on this court as there was no showing of a similarity of parties or subject matter. Pioneer Irrigating Ditch Co. v. Blashek, 41 N.M. 99, 64 P.2d 388 (1937); Adams v. Cox, 55 N.M. 444, 234 P.2d 1043 (1951). Even though Maroney had received a registered letter from the attorneys for lessor's brother contesting the lease, the attorneys for the executor later directed him to pay rent to the estate, which he did. There was sufficient evidence before the court to find Maroney's possession was lawful, and the court's refusal to conclude that plaintiff was a trespasser was not error.

Did Maroney's agreement with the Lovington National Bank leave him with no insurable interest? On July 13, 1965, he signed an agreement with the Bank that in consideration of a $6,500.00 loan he, Maroney, as seller, had conveyed to the Bank, as purchaser, all of the improvements on the tract mentioned in the bill of sale attached, and that such constituted a complete transfer of title and not a lien or security. The agreement further provided:

"IT IS FURTHER AGREED that in the event of the sale of other property of the seller and payment to the purchaser of the full amount of the indebtedness existing between the seller and the purchaser, the purchaser agrees that it will re-convey the property above described to the seller.

"IT IS FURTHER AGREED between the parties that so long as title to the above described property is held by the purchaser, the seller will be solely responsible for the maintenance and upkeep of said property and agrees to be solely responsible for damages to third-parties which may be caused by reason of the maintenance by him of said property,

and he further agrees to hold harmless and indemnify purchaser in the event any person recovers a judgment for damages arising out of the use or maintenance of the aforedescribed property."

The bill of sale described the three bedroom dwelling, a warehouse, and 70 vending machines and racks located in the warehouse.

Appellant contends that under the doctrine in Sargent v. Hamblin, 57 N.M. 559, 260 P.2d 919 (1953), and Trujillo v. Montano, 64 N.M. 259, 327 P.2d 326 (1958), the court must find that Maroney thus divested himself of any interest in the property and had no insurable interest on the date the policy was issued or the date of the loss. In the Sargent and Trujillo cases, supra, we said that in order to have a deed, which on its face is an absolute conveyance, declared a mortgage, it is necessary to prove by clear and convincing evidence that the instrument was simply security and not a deed absolute. Whether this doctrine is applicable to the agreement between Maroney and the Bank, or whether the evidence here was clear and convincing of a security arrangement, we need not decide. Maroney remained in possession of the property and this fact, together with his commitments to the Bank in the agreement itself, gave him an insurable interest.

■ We hold that plaintiff Maroney had an interest in the insured property by the existence of which he would have gained an advantage and by the destruction of which he would have suffered a loss, even though he may not have had title thereto. This constitutes an insurable interest in New Mexico. Universal C. I. T. Corporation v. Foundation Reserve Insurance Co., 79 N.M. 785, 450 P.2d 194 (1969).

■ The trial court concluded that the Bank was entitled to $4,587.00 (the amount due on Maroney's indebtedness on the date of the trial) from the judgment for $8,000 awarded to Maroney, but its judgment ran to each of the plaintiffs. Neither objected. We fail to see how the defendant can complain of how the judgment was divided between the plaintiffs. Whether the Bank was named in the loss payable clause, or whether the assignment of the policy to it was valid is of little importance, as the loss must be paid to the insured if not to his assignee. The defendant does not claim that the purported assignment voids the policy.

■ Appellant claims that the damages awarded are excessive. It points out that plaintiff Maroney had listed the dwelling covered by the policy, together with the uninsured barns, warehouse, and corrals, and personal property, including 24 vending machines, for sale at $8,500.00. It then deducts certain "undestroyed items" at Maroney's estimated value from $8,500.00 and arrives at a loss of $6,320.00 which it contends is all it is obligated to pay. The only values of the property in evidence were those testified to by Maroney.

The policy provided for insurance:

" * * * to the extent of the actual cash value of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality within a reasonable time after such loss * * *."

The court found that the residence and the storage barn were wholly destroyed. The policy, however, covers the residence in the sum of $8,000.00 only. The fact that Maroney agreed to sell the property at a lesser figure is not controlling. Perhaps his offer was for less than its actual cash value. Detroit Fire and Marine Ins. Co. v. Boren-Stewart Co., 203 S.W. 382 (Tex. Civ.App.1918). He testified that he had put about $14,000.00 into the house. This was sufficient for the court to find that the residence was valued at $10,000.00 under the lease, less depreciation, which would not reduce the insurable interest in the loss below the $8,000.00 maximum of the policy. If less than total loss was claimed, or if the cost to repair or replace was to be used, the burden of presenting such evidence was on the defendant. Johnson v.

Mercantile Ins. Co. of America, 47 N.M. 47, 133 P.2d 708 (1943).

There being no error in the judgment, it is hereby affirmed.

It is so ordered.

TACKETT, J., and JOE ANGEL, District Judge, concur.