758 P.2d 796

James L'ALLIER, Plaintiff–Appellee,

v.

Bryan TURNACLIFF,
Defendant–Appellant,

v.

STATE FARM INSURANCE COMPANY,
Intervenor–Plaintiff–Appellee.

No. 17458.

Supreme Court of New Mexico.

Aug. 9, 1988.

James A. Burke, Santa Fe, for defendant-appellant.

Simons, Cuddy & Friedman, Robert D. Castillo, Santa Fe, for plaintiff-appellee SFIC.

Richard C. Bosson, Santa Fe, for plaintiff-appellee L'Allier.

OPINION

SCARBOROUGH, Chief Justice.

James L'Allier filed a complaint against Brian Turnacliff seeking recovery for personal injuries sustained in an automobile accident in which L'Allier alleged Turnacliff operated a 1983 Porsche in an unlawful and tortious manner. Turnacliff had in effect an insurance policy with State Farm Insurance Company which provided liability insurance coverage for a 1985 Pontiac automobile he owned. Turnacliff answered the L'Allier complaint and tendered his defense to State Farm. State Farm intervened and sought a declaratory judgment that it was not obliged either to defend or indemnify Turnacliff. The trial court granted State Farm's motion for summary judgment. Turnacliff appeals and argues that the trial court improperly construed the newly acquired car provision of the State Farm policy. We affirm.

Turnacliff, a Santa Fe County resident, traveled to California and negotiated the purchase of a 1983 Porsche on or around October 21, 1986. As a result of the negotiations, the California seller gave Turnacliff the keys to the Porsche and permitted Turnacliff to drive the car back to New Mexico, agreeing that further financial arrangements for payment would be made with Turnacliff's father. On November 3, the title to the car was transferred to Turnacliff with a notation that payment was made on October 28. On November 26, while driving the Porsche, Turnacliff collided with L'Allier on Cordova Road in Santa Fe. The relevant language in Turnacliff's State Farm insurance policy states:

*Newly Acquired Car* —means a *car* newly owned by *you* * * * if it * * * is an added *car* and * * * [is] owned by you * * * on the date of its delivery to *you*

\* \* \* but only if *you* \* \* \* tell us about it within 30 days after its delivery to *you* \* \* \* and pay us any added amount due. (emphasis in original).

■ The dispositive issue on appeal is whether, as a matter of law, the thirty-day notice period under the newly acquired car provision in Turnacliff's automobile insurance policy began to run when Turnacliff took delivery of the car. We hold that delivery is a critical element of ownership of a car, and when the circumstances indicate that the parties intended for ownership of the car to pass, delivery of the car is sufficient to trigger the running of the newly acquired car provision in an automobile insurance policy.

■ In this case, the dispute centers upon whether Turnacliff "owned" the car at the time of delivery on October 21, 1986. Turnacliff argues that although he had accepted delivery of the Porsche on or around October 21, the newly acquired car provision in his policy did not begin to run until he acquired an insurable interest in the car on October 28, the date the parties intended title to pass and Turnacliff became the "legal owner" of the car. Turnacliff points us to the definition of insurable interest set forth in *Universal C.I.T. Corp. v. Foundation Reserve Ins. Co.,* 79 N.M. 785, 450 P.2d 194 (1969).

> It is well settled that any person has an insurable interest in property, by the existence of which he will gain an advantage, or by the destruction of which he will suffer a loss, whether he has or has not any title in, or lien upon, or possession of the property itself.

*Id.* at 786, 450 P.2d at 195 (citations omitted). Clearly, a person may have an insurable interest in property without actually having "title" to the property. *See Forsythe v. Central Mut. Ins. Co.,* 84 N.M. 461, 505 P.2d 56 (1973) (ultimate issue is not whereabouts of the legal title, but rather which party or parties have insurable interests).

■ According to the policy language, the newly acquired car provision began to run when the newly acquired car was "owned" and "delivered" to Turnacliff.

Both parties agree that title to property passes when the parties intend it should pass. *See Knotts v. Safeco Ins. Co. of America* 78 N.M. 395, 432 P.2d 106 (1967). Furthermore, both agree that intent of the parties for title to pass is to be determined by reference to the facts and circumstances of each case. *See Yahnke v. State Farm Fire and Casualty Co.,* 4 Ariz.App. 287, 419 P.2d 548 (1966); *Everly v. Creech,* 139 Cal.App.2d 651, 294 P.2d 109 (1956). The facts and circumstances of this case reveal that Turnacliff took delivery of the Porsche on October 21. Furthermore, the parties clearly intended that a sale take place on October 21. Title passed at the time of delivery. Only the details of payment and delivery of paper title remained to be completed. Turnacliff had an insurable interest at the time of delivery of the Porsche.

Finally, Turnacliff argues that payment of the premium is irrelevant. State Farm concedes that payment of the premium is irrelevant during the thirty-day period after delivery, and states correctly that without notice and premium payment, automatic insurance coverage expires when the thirty-day period ends. Turnacliff accepted delivery of the Porsche on October 21. He did not notify State Farm of the purchase, nor did he pay an additional premium within the thirty day period following delivery. Turnacliff had no coverage at the time of the accident. We affirm.

IT IS SO ORDERED.

SOSA, Senior Justice, and RANSOM, J., concur.